# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| U.S. SPECIALTY INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. |
| HIGHLANDER CONSTRUCTION & ) | |
| DESIGN, INC.; SIMON GASIENICA- ) | |
| DANIEL; and STEVEN JOUNG, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, U.S. Specialty Insurance Company ("USSIC"), by and through its undersigned counsel, for its Complaint for Declaratory Judgment against Highlander Construction & Design, Inc. ("Highlander"), Simon Gasienica-Daniel ("Gasienica-Daniel"), and Steven Joung ("Joung"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment, brought pursuant to 28 U.S.C. §§ 2201 and 2202, for the purpose of resolving an actual controversy between the parties regarding their respective rights and obligations under an insurance policy that USSIC issued to Highlander, under which Gasienica-Daniel purports to be an insured.[1] In particular, USSIC seeks a declaration that it owes no defense or indemnity obligation under the subject insurance policy with respect to the Insureds' alleged liability in an underlying civil lawsuit pending in the Circuit Court of Cook County, Illinois – Law Division, styled *Steven Joung v. Highlander Construction & Design, Inc., et al.*, Case No. 2024 L 02328 (the "Underlying Lawsuit").

---

[1] Highlander and Gasienica-Daniel are hereinafter collectively referred to as the "Insureds."

**THE PARTIES AND CITIZENSHIP**

1. USSIC is an insurance company organized and existing under the laws of the State of <u>Texas</u>, with its principal place of business in Houston, <u>Texas</u>. USSIC is authorized to transact the business of insurance in the State of Illinois and elsewhere.

2. Upon information and belief, Highlander is a corporation organized and existing under the laws of the State of <u>Illinois</u>, with its principal place of business in Justice, <u>Illinois</u>.

3. Upon information and belief, Gasienica-Daniel is the President of Highlander and a citizen of the State of <u>Illinois</u> residing in Justice, <u>Illinois</u>.

4. Upon information and belief, Joung is a citizen of the State of <u>California</u> residing in La Jolla, <u>California</u>. Joung is joined to the extent that he is a necessary and indispensable party to this action and to ensure that he is bound by any judgment rendered herein.

**JURISDICTION AND VENUE**

5. This action is brought, in part, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

6. This Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a), because complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. In declaratory judgment actions based on diversity jurisdiction, it is well-established that the amount in controversy is measured by the value of the object of the litigation, including the pecuniary effect an adverse declaration will have on any party to the lawsuit.

8. If USSIC does not prevail, it will be required to defend, and possibly indemnify, each of the Insureds in the Underlying Lawsuit without participation from any other source.

9. In the Underlying Lawsuit, Joung seeks damages in the amount of "at least $13,500" and, further, claims that the Insureds are liable for fraud/fraudulent inducement and

violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, for which Joung seeks additional compensatory damages and punitive damages "in excess of $50,000," plus an award of attorneys' fees.

10. There should be no dispute that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11. The Insureds are citizens of, and/or domiciled in, the State of Illinois, and each have sufficient minimum contacts with this judicial district to confer personal jurisdiction over them in this Court.

12. Joung has sufficient minimum contacts with Illinois by having initiated the Underlying Lawsuit in the Circuit Court of Cook County, Illinois, thus purposely availing himself of the benefits and protections of Illinois law.

13. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to this claim occurred within this district and the Underlying Lawsuit is pending within this district.

## RELEVANT FACTUAL BACKGROUND

14. On or about September 20, 2021, Highlander presented a proposal (the "Contract") to Joung for the refinishing of hardwood flooring in Joung's condominium unit in the RiverView Condominiums located at 445 E. North Water Street, Unit 2205, Chicago, Illinois (the "Unit"), among other interior work. (A true and correct copy of the Contract is attached hereto as Exhibit 1.)

15. In particular, Highlander proposed to remove damaged hardwood flooring in the kitchen area and hallway, to install new three-inch quarter sawn white oak in the kitchen area and hallway, to sand down and refinish all hardwood flooring, to stain and seal all hardwood flooring, and to reinstall certain appliances and other items.

16. Joung executed the Contract on September 30, 2021, which reflected his acceptance of the prices, specifications, and conditions set forth therein.

17. After the Contract was signed, Highlander began construction in or around late September 2021.

18. Joung sent the final payment to Highlander sometime in April 2022.

19. Joung alleges that he performed an inspection of the Unit on or about May 5, 2022. That same day, Joung informed Highlander that the kitchen flooring that Highlander installed was starting to come up. Additionally, Joung emailed Gasienica-Daniel, Highlander's principal, attaching pictures of the defective work.

20. Joung claims that the defects in Highlander's installation of the replacement flooring included: (1) failure to ensure the subflooring was dry and moisture-free prior to installing new flooring; (2) use of improper cork instead of Enkasonic in violation of the RiverView Condominium Construction Rules; (3) the buckling of kitchen flooring on the north end of the island between the sink and stove; and (4) a hole in the kitchen area on the east end of the island.

21. Highlander was allegedly given numerous opportunities to fix the defective flooring but failed to do so.

22. On March 2, 2024, Joung filed the Underlying Lawsuit. (A true and correct copy of the Verified Complaint filed in the Underlying Lawsuit is attached hereto as Exhibit 2.)

23. In the Underlying Lawsuit, Joung's claims against the Insureds are set forth in three causes of action:

| | |
|---|---|
| Count I | Breach of Contract against Highlander |
| Count II | Fraud/Fraudulent Inducement against Highlander and Gasienica-Daniel |
| Count III | Violation of Consumer Fraud and Deceptive Business Practices Act against Highlander and Gasienica-Daniel |

24. By way of relief, Joung seeks actual damages in an amount of approximately $13,500.00, punitive damages in an amount in excess of $50,000, an award of reasonable attorneys' fees, and all such other and further relief as the court deems just and proper.

## USSIC'S PRELIMINARY CLAIMS HANDLING

28. USSIC, through its authorized claims administrator, HCC Casualty Insurance Services, Inc. ("HCC"), received notice of the Underlying Lawsuit on or about March 27, 2024.

29. By letter dated May 1, 2024, HCC, on behalf of USSIC, sent a letter to the Insureds disclaiming any duty to defend or indemnify them in the Underlying Lawsuit.

30. The disclaimer letter fairly informs the Insureds of the various grounds on which coverage for the Underlying Lawsuit is precluded or limited under the policy that USSIC issued to Highlander.

31. An actual, present, and justiciable controversy has arisen and now exists between the parties regarding their respective rights, duties, and obligations under the policy that USSIC issued to Highlander, including whether USSIC has any defense or indemnity obligation thereunder based on the facts at issue in the Underlying Lawsuit.

## THE USSIC POLICY

25. USSIC issued policy number U21AC95830-04 to Highlander for the policy period January 17, 2021 to January 17, 2022 (the "USSIC Policy"). (A true and correct copy of the USSIC Policy is attached hereto as Exhibit 3.)

26. The USSIC Policy affords coverage for Commercial General Liability ("CGL"), among other risks, and contains Limits of Insurance of $1 million each "occurrence"[2] and $2 million general aggregate, subject to a $500 per "occurrence" deductible.

---

[2] Terms in quotation marks are defined in the USSIC Policy.

5

27. The USSIC Policy provides the following, in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . .

   b. This insurance applies to "bodily injury" and "property damage" only if:

     **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]

     **(2)** The "bodily injury" or "property damage" occurs during the policy period;

                    \*     \*     \*

**2. Exclusions**

This insurance does not apply to:

                    \*     \*     \*

**j. Damage To Property**

"Property damage" to:

                    \*     \*     \*

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

                    \*     \*     \*

**SECTION V – DEFINITIONS**

                    \*     \*     \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

**22. "**Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

\* \* \*

**EXCLUSION - RESIDENTIAL CONSTRUCTION WITH APARTMENT AND REPAIR AND REMODELING EXCEPTIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Paragraph **2., Exclusions** of **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:**

**A.** This insurance does not apply to:

7

1. "Bodily injury", "property damage" and/or "personal and advertising injury" arising out of the construction and/or repair of single family and multi-family dwellings.
2. "Bodily injury", "property damage" and/or "personal and advertising injury" arising out of the construction of any "apartment" if that "apartment" is subsequently converted by you or by anyone else at any time into "condominium(s) or townhome(s)".

**B.** This exclusion does not apply to:

1. "Apartments".
2. The non-structural repair and remodeling of a single family dwelling or the nonstructural repair and remodeling of a "condominium(s) or townhome(s)" unit, if the certificate of occupancy has been obtained for that unit or dwelling prior to the commencement of "your work".
3. Maintenance, service, or non-structural repairs to common areas of a completed development for which a certificate of occupancy has already been obtained prior to the commencement of "your work" on that development.

**C.** As used in this endorsement, the following terms have the following meanings:

1. "Apartments" means a unit of residential real property in a multi-unit building where all the units are owned by and titled to a single person or entity.
2. "Condominium(s) or townhome(s)" means a unit of residential real property in a multi-unit residential building or project where each unit is individually owned and titled.

\*     \*     \*

**COUNT I – DECLARATORY RELIEF**
**(Joung Does Not Seek Damages Because of "Property Damage")**

28. USSIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

29. Under the insuring agreement of Coverage A of the USSIC Policy's Commercial General Liability ("CGL") Coverage Form, USSIC will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. USSIC has the right and duty to defend the insured against any "suit" seeking

8

those damages. However, USSIC will have no duty to defend the insured against any "suit" seeking those damages to which the insurance does not apply.

30. "Property damage" means, in relevant part, physical injury to tangible property, including all resulting loss of use of that property; or loss of use of tangible property that is not physically injured.

31. A CGL policy, such as the USSIC Policy, is intended to protect the insured from liability for injury or damage to the persons or property of others; it is not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses.

32. In the Underlying Lawsuit, Joung merely seeks either the repair or replacement of defective work or damages for the diminishing value of the Unit.

33. Because Joung seeks recovery for economic loss and not physical injury to tangible property, no "property damage" is alleged.

34. There is no coverage for the Underlying Lawsuit on this basis.[3]

## COUNT II – DECLARATORY RELIEF
### (There Is No "Occurrence")

35. USSIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

36. In relevant part, the USSIC Policy applies to "property damage" only if the "property damage" is caused by an "occurrence."

---

[3] In the Underlying Lawsuit, Joung does not seek damages because of "bodily injury" or "personal and advertising injury," as such terms are defined in the Policy. Nor does Joung seek reimbursement of medical expenses falling within the scope of Coverage C of the CGL Coverage Form.

37. "Occurrence" means an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."

38. Though not defined in the USSIC Policy, Illinois courts construing insurance policies have defined "accident" as an unforeseen occurrence, usually of untoward or disastrous character or an undesigned, sudden, or unexpected event of an inflictive or unfortunate character.

39. The natural and ordinary consequences of an act do not constitute an accident.

40. In order for a construction defect to be classified as an "occurrence," it must damage something other than the project itself.

41. In the Underlying Lawsuit, Joung alleges damage only to the hardwood flooring that Highlander was retained to remove and reinstall. It is the wood flooring itself that is damaged, not anything else.

42. Because the damage affected only the hardwood flooring project itself, there is no "occurrence."

43. The two fraud-based causes of action against the insureds similarly do not involve an "occurrence."

44. There is no coverage for the Underlying Lawsuit on this basis.

## COUNT III – DECLARATORY RELIEF
### (No "Property Damage" Took Place During the Policy Period)

45. USSIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

46. To the extent the Verified Complaint filed in the Underlying Lawsuit can be construed as seeking damages because of "property damage" (which USSIC disputes), such "property damage" must occur during the policy period.

10

47. Upon information and belief, no damage or harm occurred until after the January 17, 2022 expiration of the USSIC Policy.

48. There is no coverage for the Underlying Lawsuit on this basis.

## COUNT IV – DECLARATORY RELIEF
### (The Condo Exclusion Applies to Bar Coverage)

49. USSIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

50. An endorsement to the USSIC Policy, titled "Exclusion – Residential Construction With Apartment and Repair and Remodeling Exceptions" (the "Condo Exclusion"), provides, in relevant part, that the insurance under Coverage A of the CGL Coverage Form does not apply to "property damage" arising out of the construction and/or repair of single family and multi-family dwellings.

51. Joung's Unit is part of a condominium complex, *i.e.*, a multi-family dwelling.

52. While there is an exception for the non-structural repair and remodeling of a "condominium or townhome"[4] if the certificate of occupancy has been obtained for that dwelling prior to the commencement of Highlander's work, hardwood flooring is structural in nature as it is permanent and cannot be removed without changing the building's infrastructure. Hardwood structural installation flooring is distinguishable from floor coverings, such as engineered wood, laminate, vinyl, and carpet, which only add aesthetic value.

53. Accordingly, the allegations in the Verified Complaint fall squarely within the exclusionary language of the Condo Exclusion.

---

[4] "Condominium or townhome" means a unit of residential real property in a multi-unit residential building or project where each unit is individually owned and titled.

54. The Condo Exclusion applies to bar coverage for all claims asserted against the Insureds in the Underlying Lawsuit.

55. There is no coverage for the Underlying Lawsuit on this basis.

## COUNT V – DECLARATORY RELIEF
**(Business Risk Exclusions Apply to Bar Coverage)**

56. USSIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

57. Exclusion j.(5) provides that the insurance under Coverage A of the CGL Coverage Form does not apply to "property damage" to "that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations."

58. Exclusion j.(6), moreover, provides that the insurance under Coverage A does not apply to "property damage" to "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." "Your work" is defined, in relevant part, as "work or operations performed by you or on your behalf."

59. These business risk exclusions are premised on the theory that liability policies are not intended to provide protection against the insured's own faulty workmanship or product, which are normal risks associated with the conduct of the insured's business. Rather, such policies are meant to afford coverage for damage to other property caused by the insured's work or product.

60. The Insureds request coverage for their own defective work. Put another way, the Insureds ask USSIC to cover damage as a result of the normal risks associated with hardwood flooring installation. The Insureds do not request coverage for damage to any other property.

61. Accordingly, both Exclusions j.(5) and j.(6) apply to bar coverage for the claims asserted against the Insureds in the lawsuit.

62. There is no coverage for the Underlying Lawsuit on this basis.

## COUNT VI – DECLARATORY RELIEF
### (No Duty to Indemnify)

63. USSIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

64. The duty to defend subsumes the duty to indemnify.

65. If there is no duty to defend, then there is no duty to indemnify as a matter of law.

66. Therefore, to the extent that USSIC owes no duty to defend, there likewise is no potential duty to indemnify.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, U.S. Specialty Insurance Company, respectfully requests that this Court enter judgment in its favor, and against Highlander, Gasienica-Daniel, and Joung as follows:

(a) Declaring that USSIC owes no duty to defend or indemnify Highlander or Gasienica-Daniel under the USSIC Policy with respect to the claims asserted in the Underlying Lawsuit; and

(b) Granting USSIC any other and further such relief as this Court deems just and appropriate.

## JURY DEMAND

USSIC hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

Dated: May 1, 2024               Respectfully submitted,

/s/ Jordon S. Steinway
Jordon S. Steinway
Allison Y. Cho
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, Illinois 60606
Telephone: (312) 762-3169

Email: jsteinway@batescarey.com
Email: acho@batescarey.com

*Counsel for U.S. Specialty Insurance Company*

23765.8348624